Gunter, J.
September, 1887, Ellen R. Seymour and W. G. Pell, owners of certain mining property, conveyed the same to the Slide and Spur Gold Mines Company (Limited). In 1889, the company having defaulted in the payment of the purchase price of the property so conveyed, the vendors, Seymour and Pell, sued in the United States circuit court for the district of Colorado to have decreed a vendor’s lien upon the property sold, and in July, 1890, obtained a decree establishing their lien. September, 1894, the master in chancery sold the property under the decree, and in May following made a deed, pertinent parts of which are as follows:
“Now, therefore, I, Adolphus Capron, one of the masters in chancery of the said court, did on the said 24th day of September, A. D. 1894, at one o’clock p. m. of the said day, at the front door of the court house of the county of Boulder, in the city of Boulder, it being the time and place at which the said sale was announced in the said' advertisement to take place, offer for sale to the highest bidder for cash the same premises above described, except that in and by'the terms of said decree the complainants were allowed at the said sale to bid for said property up to the amount of said decree with interest thereon without paying any cash except sufficient to pay costs, and thereupon Willard Teller bid for the said complainants, in his name for the use of complainants, the sum of $362,000, and he, at that price, being the highest bidder therefor, the same was struck off and sold to the said Willard Teller, and
“Whereas, it was further in said decree ordered and decreed that upon said sale the said master in *511 chancery making snch sale should make, execute and deliver to the purchaser a deed of the property so sold by him, upon the. execution and delivery of which the said defendant, the Slide and Spur Gold Mines Company (Ltd.), its successors and assigns, and all persons claiming through, by or under it, should be forever barred of all right, title or interest in said property, and of all equity of redemption thereof.
“Now therefore I, Adolphus Capron, master in chancery aforesaid, do by these presents grant, bargain, sell and convey unto the said "Willard Teller, trustee, and to his heirs and assigns forever the said real estate * * * to have and to hold to the said Willard Teller, trustee, for his heirs and assigns forever. ’ ’
This deed was of date May 11, 1895, and recorded in the office of the county clerk of the county wherein the property was situate May 13, same year. April, 1894, a judgment for $3,571.00 and costs was recovered by appellee Hill against Ellen R. Seymour and W. G. Pell et ál., and a transcript thereof was filed in the office of the clerk of the said county of Boulder.
In April, 1895, the present action was instituted by appellee for the purpose of subjecting the above mining property conveyed by the deed from the master in chancery to Teller, trustee, to the judgment of appellee, and to have his judgment declared a prior lien to any claim of the appellant Teller.
Prom the judgment awarding appellee the relief prayed the defendant below has appealed.
The position of appellee is that the Statute of Hses, 27 Henry VIII, c. 10, operated upon the legal estate conveyed to Teller by the master’s deed executing the legal estate and uniting thereby the legal and equitable estate in the cestuis que use, who *512 thus became complete owners of the estate as well at law as in equity; that upon the estate of 'the cestuis que use Seymour and Pell thus created the transcript of the appellee’s judgment by operation of law became a lien, and that such lien was superior to any secret lien existing between appellant Teller, and Seymour and Pell, the beneficiaries under the master’s deed.
Appellant denies that the Statute of Uses is in force in Colorado. Contends that if it is, it did not operate upon the master’s deed, because the trust created thereby and by a certain oral agreement was an active trust, and therefore not within the statute. Further, that the firm of Teller & Orahood had an attorney’s lien upon the estate created by the master, superior to the lien created by the transcript of judgment of appellee.
1. We have adopted, along with the common law of England, “all acts and statutes of the British parliament made in aid of or to supply the defects of the common law prior to the fourth year of James the First” as are of a general nature, except designated statutes. — Mills’ Ann. Stats., vol. 2, § 4184.
That the Statute of Uses was one of the statutes so adopted by this commonwealth, was ruled in Morgan v. Rogers (Cir. Ct. App., 8 Cir.), 79 Fed. 577. No authority is cited to the contrary.
2. The master’s deed recites that “complainants Pell and Seymour were allowed to bid without paying any cash except sufficient for costs, and that thereupon Willard Teller bought for complainants in his own name for the use of said complainmits * * * . Therefore I, Adolphus Capron * * * grant, bargain, sell and convey unto the said Willard Teller, trustee, * * * , to have and to hold unto the said Willard Teller, trustee, * * * . ”
*513 According to the language of this deed Willard Teller purchased the property conveyed for the use of complainants, and it was deeded to him, according to the language of this deed, for the use of complainants, that is, Seymour and Pell.
“Recitals are introduced for the purpose of explaining why the deed is executed, or of showing circumstances which preserve the connection in the chain of title, * * * . Particular recitals are conclusive evidence of the facts recited in actions in which the purpose of the deed is directly involved. ’ ’ — Devlin on Deeds, § 992.
“The rule is well settled that the parties to a deed are bound by the recitals in it legitimately appertaining to the subject-matter, and that this applies to privies in .blood, privies in estate and privies in law.” — Robbins v. McMillan, 26 Mass. (4 Cush.) 434.
There is thus on record a deed wherein the grantor conveys to the grantee certain real estate for the use of third parties. • The parties thus created, if we look to the recorded deed alone, an express passive trust. A conveyance of such character is within the Statute of Uses.
“Thus, if A. grants or bequeaths land to B. and his heirs, in trust for C. and his heirs, the trustee B. will take nothing in the land, but the legal title, as well as the beneficial use, will vest immediately in C., for the Statute of Uses, so called, executes the possession and the legal title in the same person to whom the beneficial interest is given. * * * A use, a trust and a confidence is one and the same thing, and if an estate is conveyed to one person for the use of or upon a trust for another, and nothing more is said, the statute immediately transfers the legal estate to the use, and no trust is created, although express words of trust are used. So absolute *514 is the statute that it will operate upon all conveyances in the words above stated, although it was the plain intention of the settler that the estate should vest and remain in the first donee; for the intention of the citizen cannot control express enactments of the legislature, or positive rules of property.” —Perry on Trusts (5 ed.), § 298.
“Every estate in lands which shall be granted, conveyed or devised to one, although other words heretofore necessary to transfer an estate of inheritance be not added, shall be deemed a fee simple estate of inheritance, if a less estate be not limited by express words, or do not appear to be granted, devised or conveyed by operation of law.” — Mills’ Ann. Stats., vol. 1, p. 587, sec. 433.
Heading this section of the statute into the master’s deed, the substance of the language of the deed becomes a grant of land by A. to B. and his heirs in trust for C. and D. and their heirs:
“The Statute of Uses will only operate upon a conveyance to uses, and transfer the legal to the holder of the equitable title, when the following three elements are present: First, a person seized to a use, and in esse; second, a cestui que use in esse; and, third, a use in esse.” — Tiedman on Real Property, § 460. - •
Appellant contends, as stated, that all the terms of the use or trust were not embodied in the deed, and it appeared undisputed from the evidence which he tendered, and which the court declined to consider, that in 1889 Seymour and Pell employed the firm of Teller & Orahood to bring an action against the. Slide Spur Gold Mines Company (Ltd.) to establish for them a vendors’ lien for the unpaid portion of the purchase money. That Teller and Ora-hood brought such action under the agreement of Seymour, and Pell to pay them reasonable compensa *515 tion for their services, and that they obtained the decree establishing the vendors’ lien, and that prior to the sale of the property Seymour and Pell agreed that Mr. Willard Teller should buy in the property at the master’s sale, taking the title to himself as trustee under the further agreement that he should operate and develop the property, and so soon as he was able to obtain a reasonable price therefor sell it, pay to the firm of Teller & Orahood the attorneys’ fees due them, and all expenses of litigation, and expenses incurred in the operation and preservation of the property. This agreement was oral, and in' pursuance of it Mr. Willard Teller bought in the property, proceeded to operate it, and incurred unsatisfied expense in so doing, and also paid large sums for taxes due upon the property. The court declined to receive this evidence.
Appellee had no notice actual or constructive of this oral agreement between . Teller and Seymour and Pell.
Appellant contends that his oral agreement with Seymour and Pell that he should have a lien upon this property for the purpose named could be shown against the lien of record of appellee, and although appellee had no notice of it, should be superior to the lien of appellee.
“All deeds, conveyances, agreements in writing of or affecting title to real estate or any interest therein, and powers of attorney for the conveyance of any real estate or any interest therein may be recorded in the office of the recorder of the county wherein such real estate is situate, and from and after the filing thereof for record in such office and not before, such deeds, bonds and agreements in writing shall take effect as to subsequent bona fide purchasers and incumbrancers by mortgage, judg *516 ment or otherwise not having notice thereof.” —Mills’ Ann. Stats., vol. 1, sec. 446.
This statute has frequently been construed by our courts. In Perkins v. Adams, 16 Colo. App. 96, Perkins and Maurice were executors of the will of Touzaiin, deceased. As authorized by the will, the executors loaned $30,000.00 of the money of the estate to Bailey, who secured the loan by a trust deed upon certain real estate in East Denver, one Van BJeeck being trustee. The note not being paid at maturity, the trustee, upon request of the executors, sold the property pursuant to the terms of the deed. At the sale the property was purchased by Perkins, and it was conveyed to him by the trustee. The deed to him was dated September 4, 1895, and was recorded on the 6th day of September, same year. January, 1897, Adams and Holmes sued Perkins to recover a certain indebtedness, and in aid of the action sued out a writ of attachment, which writ was levied upon the property conveyed to Perkins. March, 1897, Perkins conveyed the property'to Maurice and himself as executors of the will of Touzaiin. August, 1897, the executors commenced this action against Adams and Holmes to remove from their title the cloud created by the levy of the attachment, alleging, among other matters, that Perkins never paid any part of the purchase price of the property from his own money, but took and held the title as trustee for the estate of the decedent. The defendants, Adams and Holmes, relied upon their attachment lien and want of notice or knowledge that Perkins was not the absolute owner of the property, or that he held the title otherwise than in his individual capacity. The court sustained the contention of the defendants and said:
“There can be no doubt that as between Perkins and estate, the property belonged to the latter; *517 but we must look further to find what the rights ■of the estate as against these defendants may be.”
Then quotes the section of. our statute last cited. After the quotation the opinion proceeds:
“By virtue of that provision, a purchaser or incumbrancer of land may rely upon the title which he finds upon the record, and will be protected against an outstanding claim which the record does not show, and of which he has no actual notice. And it has been held by the supreme court and this court that the lien of an .attachment is an incumbrance within the meaning of the statute, and takes precedence of an unrecorded title or interest of which the attaching creditor had no notice at the time of his attachment. * * * These defendants found the title to the property in question standing upon the record in the name of Mr. Perkins, and in their •suits against him levied their attachment upon it. * * * By an arrangement between himself and his coexecutors he took the title for the benefit of the estate, proposing to sell the property and turn the proceeds over to the estate. As between himself and the estate, he was a trustee, and equity would compel him to account to the estate for the property; but third persons would not be affected by the trust, unless they had actual notice of its existence, •or unless there was something which they were bound to know suggestive of its existence. * * * The deed recites that Perkins was the highest and best bidder, and that the property was sold to him. It acknowledges the receipt of the purchase money from him and conveys the land to him, his heirs and assigns, forever. This is the record which the estate, by its executors, caused to be made upon the title; and as to outside parties with no knowledge of the situation except what may be gained from it it imparts absolute verity. The plaintiffs were *518 entitled to rely npon that record, and were not called upon to look further. ’ ’
In Jerome v. Carbonate National Bank, 22 Colo. 37, the contest was between one claiming under the lien of an attachment levied, and one claiming under a prior but unrecorded deed. The court held the lien of attachment superior to the rights conveyed by the unrecorded deed, assigning as its reason therefor the section of statute just cited, and in the course of the opinion the court said:
“Whatever the law may be in other jurisdictions, it is settled in this state that one who takes property in payment or security of a pre-existing debt is to be regarded as a purchaser for a valuable consideration. * * * An attaching creditor belongs to that class of lienors described in the statute as incumbrancers otherwise- than by mortgage or judgment. ’ ’
In McFarran v. Knox, 5 Colo. 217, McFarran had a judgment against McGovney, and filed the transcript thereof in. the office of the recorder of the county where certain real estate in which Mc-Govney had an interest was situate. By an unrecorded instrument of which McFarran had no knowledge McGovney had transferred his interest in the lot by a prior assignment to one Knox. It was held that the transcript of judgment was a prior lien over the interest acquired by the secret agreement between McGovney and Knox. The court said, in speaking of the unrecorded bond through which Knox claimed:
“A bond for the conveyance of real estate comes clearly within the provisions of this section, and unless recorded will not take effect as against a subsequent bona fide purchaser or incumbrancer without notice.”
Our statute, Mills’, vol. 3, sec. 2529, provides: '
*519 “All and singular * * * the real estate of ■every person against whom any judgment shall be obtained in any court of record either at law or in equity, for any debt, damages, costs or any other sum of money, shall be liable to be sold on execution, to be issued upon such attachment, and a transcript of the docket entry of any judgment in the judgment docket, certified by the clerk, may be filed with the recorder of any county; and from the time of filing such transcript the judgment shall become a lien upon all the real property of such judgment debtor, and not exempt from execution in such county, owned by him, or which he may afterwards acquire, until the said lien expires.”
In Emery v. Yount, 7 Colo. 110, the court said:
“If he (the judgment creditor) takes advantage of the statute and records,. he obtains a judgment lien upon all the realty, of the debtor not exempt from execution, * * * this lien takes precedence over subsequent purchases or incumbrances thereof.”
In McMurtrie v. Riddell, 9 Colo. 501, the court said:
“No subsequent transfer or incumbrance by the debtor can prejudice the right of such creditor.”
Applying the law to the facts before us, the deed of the master in chancery construed from its unambiguous language, conveyed the real estate in question to Teller, trustee, for the use of Seymour and Pell. The estate so conveyed was unlimited as to time. The legal title so conveyed was in fee — ■ so was the use. The Statute of Uses operated, transferred the legal title to cestuis que use who, perforce the statute and the deed became the owner in fee of the legal and equitable estate in the property conveyed. In legal effect the deed of the master conveyed the entire legal and equitable estate in *520 the property to Seymour and Pell. When such an estate was declared by the recording of the deed, .the transcript of judgment of appellee immediately attached to it, creating a lien superior to the secret lien, which, by oral agreement, existed between appellant and Seymour and Pell.
3. Appellant further contends that he has a superior lien to appellee through his attorney’s lien.
• Appellee had no notice- of appellant’s right to or intention to claim an attorney’s lien at the time he filed his transcript of judgment, and, therefore, the lien acquired through his transcript is superior to the right of an attorney’s lien if one still exist between appellant and Seymour and Pell. — Johnson v. McMillen, 13 Colo. 426; Fillmore v. Wells, 10 Colo. 234; B. & C. S. Co. v. Pless, 9 Colo. 112.
Further, if the court below had received the evidence offered it would have shown that by the contract which appellant relied upon to show an active trust the right to an attorney’s lien was waived. —Whitehead v. Jessup, 7 Colo. App. 461.
We think the judgment below was right, and should be affirmed. Affirmed.